**Recha HIRSCHMANN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Jan. 15, 1962.

See, also, 202 F.Supp. 725.

L. Krafft Kennedy, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., New York City (Robert Arum, Asst. U. S. Atty., New York City, of counsel), for defendant.

COOPER, District Judge.

Plaintiff seeks a refund of individual income taxes for the year 1952. She here makes a motion, and the government makes a cross motion, each for summary judgment pursuant to Rule 56, Fed.R. Civ.P., 28 U.S.C.A.

In 1903 plaintiff and her husband executed a "reciprocal testament" in Frankfurt, Germany, where they then resided. Paragraph "2" thereof provided in material part:

"We legate to each other reciprocally the lifelong usufruct of the entire estate left by either of us. As long as either of us spouses making this will shall live, he or she shall retain the unrestricted possession and enjoyment of the entire property of both of us and shall in no way be restricted in disposing inter vivos also of its substance, so that our children and remaindermen will have to be satisfied with what will be left at the death of the survivor of either of us spouses."

Plaintiff's husband died in 1939. In 1951 the "reciprocal testament" was found and submitted to the Surrogate's Court, County of New York, where it was admitted to probate on September 23, 1952. The papers before the court do not disclose whether an administrator c. t. a. actually qualified before the end of 1952.

In 1953 an application to the Surrogate's Court was brought by the administrator c. t. a. urging construction

of the instrument "as creating a testamentary trust for the benefit of the sons of deceased, * * * granting the income to the widow, Recha Hirschmann, during her life with the right to invade the principal." In re Hirschmann's Estate, 124 N.Y.S.2d 801. The Surrogate determined that German law applied and that the language of the "reciprocal testament", quoted supra,

> "specifically exempts the surviving spouse from the limitations imposed by the German Civil Code which would otherwise prevent her from invading or otherwise disposing of the corpus of the estate.
>
> * * * * * *
>
> "Moreover, the nature of the reciprocal testament itself * * * argues strongly against the contention that the spouses intended to impose upon the survivor any of the restrictions or limitations that lead testators to establish trusts under our laws. * * * On the contrary, as is stated by the expert, legal title or ownership vests in the surviving spouse along with the beneficial interest in the property. Under our law this situation negates the very idea of a trust, but is characteristic of what is known as a legal life estate (sec. 92, Real Property Law * * *).
>
> " * * * Accordingly, the court holds that the reciprocal testament creates legal relationships between decedent's widow and his two sons substantially similar to the relationship known under our law as that of a legal life estate, with power to invade in the widow, and remainder interests in the two sons."

On July 3, 1953, a decree was entered in the Surrogate's Court providing in pertinent part that the instrument

> "creates legal relationships between decedent's widow and his two sons known as that of a legal life estate, with power to invade the principal in the widow and remainder interests in the two sons. * * * "

Capital gains were realized from the sale of portions of the principal of the life estate. Plaintiff reported those gains in her 1952 individual income tax return. The tax was paid. Thereafter, plaintiff filed a timely claim for a refund, which was disallowed.

Although no specific date is mentioned, plaintiff alleges that some time subsequent to September 23, 1952, the assets of the estate, consisting solely of securities, had been segregated and were thereafter managed by an administrator who has paid only income to the plaintiff. However, the government does not concede these allegations and, in any event, asserts that they are immaterial.

Is the plaintiff taxable as a fiduciary? Plaintiff's memorandum states: "The powers bestowed on plaintiff are so broad that it seems impossible to consider her occupying a fiduciary relationship with the remaindermen." Nor does the government vigorously oppose that interpretation.

█ In this regard the court finds that plaintiff is by the terms of the instrument given unfettered power to spend the entire corpus for her own benefit; that, as the Surrogate observed, this "negates the very idea of a trust," and that therefore plaintiff is not taxable in a fiduciary capacity.

Neither United States v. De Bonchamps, 278 F.2d 127, 130 (9th Cir. 1960), nor Weil v. United States, 180 F.Supp. 407, 409 (Ct. of Cls.1960), both of which held life tenants taxable as fiduciaries, is factually similar to the case at bar. In De Bonchamps, the "power to consume" was "expressly limited to her needs, maintenance and comfort." In Weil, plaintiff was entitled to the corpus only "should she find it necessary for her comfortable maintenance and support"; and she relinquished even that restricted power.

The government's principal contention here is that plaintiff, as the beneficial owner of the corpus and of the capital gains realized, remained taxable not as a fiduciary, but in her individual capacity.

As the Court of Claims aptly observed, in Weil, supra (at p. 410):

"Our approach to this issue is influenced by the repeated dictum of the Supreme Court that there is a 'legislative design to reach all gain constitutionally taxable unless specifically excluded.' General American Investors Co. v. Commissioner, 1955, 348 U.S. 434, 436, 75 S.Ct. 478, 99 L.Ed. 504."

Where, as in the instant case, the life beneficiary has unrestricted power to invade the corpus and is not taxable as a fiduciary, it would defeat that legislative design to hold her also free from tax in her individual capacity.

Doubtless some distinctions exist between the interest of a life tenant with unfettered power to invade and the interest of a full owner. But Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940), in taxing the grantor of a certain short term trust as though he were still the owner, pointed out that

" * * * Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue."

Accordingly, we must proceed to examine the "bundle of rights" which plaintiff possessed in the capital gains in order to determine whether it was "so substantial" that she "cannot be heard to complain that [she] is the 'victim of despotic power when for the purpose of taxation [she] is treated as owner altogether.'" Id., p. 337, 60 S.Ct. p. 557.

Plaintiff argues that she has no power to change either the identity of the remaindermen or the proportion of the corpus which they may, respectively, receive. However, her unfettered power to expend the entire corpus for her own benefit rendered the absent powers so insignificant that she may not complain if, for the purpose of taxation, her interest in the capital gains is treated as ownership altogether.

Plaintiff contends that her interest here may not be taxed absent explicit legislation assessing a tax on capital gains of legal life estates. The prevailing view of statutory construction is no longer so constrained.

The Clifford decision, despite vigorous dissent, was reached without direct reliance upon specific statutory provision or regulations. That decision was judicially expanded to impose tax liability upon the donee of the power to vest the corpus in himself. Richardson v. Commissioner, 121 F.2d 1 (2nd Cir. 1941). Mallinckrodt v. Nunan, 146 F.2d 1 (8th Cir. 1945). In the latter case, for example, the court declared (at p. 5):

"Since the trust income was available to petitioner upon request in each of the years involved, he had in each of those years the 'realizable' economic gain necessary to make the income taxable to him."

Here, analogously, the capital gains of the life estate were available to plaintiff.

The principles of statutory construction enunciated in the Clifford, Richardson and Mallinckrodt decisions impel the conclusion that plaintiff is taxable in her individual capacity under the Internal Revenue Code of 1939 on the capital gains here involved.

It may be noted that the De Bonchamps and Weil cases, supra, in effect, recognized the applicability of the Clifford rationale to the taxation of capital gains on assets held not in trusts but in legal life estates.. Because of the restrictions on the powers to invade, however, the courts in those cases held the life tenants taxable as fiduciaries, and not as owners. Where, as in the case at bar, such restrictions plainly do not exist, plaintiff is taxable not as a fiduciary, but in her individual capacity.

The amount of the tax involved has been stipulated and is not in dispute.

For the reasons stated above, plaintiff is not entitled to the refund claimed. Accordingly, plaintiff's motion for sum-

mary judgment is denied. Defendant's cross motion for summary judgment is granted, and the complaint is dismissed with prejudice.

Settle order on notice.